# CIRCUIT COURT OF BALTIMORE CITY

Filed March 28, 1889.

## SUSAN J. JOHNSON
## VS.
## PEOPLES BENEFIT ASSOCIATION.

*Findley & Mackenzie* for plaintiff.

*John N. Steele* for defendant.

WRIGHT, J.—

The defendant in this cause is a corporation formed in the words of its articles of incorporation, "for indemnity for loss of time arising from sickness, or accident, which causes total disability, or in the event of death."

George W. Perry Johnson, the husband of the plaintiff, became a member of said corporation on the 27th day of October, 1884, and received a certificate of membership, accompanied by a copy of certain regulations and by-laws, which are referred to in the certificate, and which, with the certificate, contain "the leading conditions, requirements, and stipulations, and are therefore the principal points of agreement under which this certificate is issued and accepted"; (see certificate, plaintiff's exhibit No. 1, and copy of by-laws, plaintiff's exhibit No. 2).

In his application for membership, Johnson designated his wife, Susan J. Johnson, the plaintiff, as the beneficiary, and she is now entitled to any rights there may be under the agreement between Johnson and the defendant, and the certificate issued to Johnson. The certificate was issued to Johnson in the class known as the one thousand dollar class, and at the time the agreement was entered into, in the event of her husband's sickness, the plaintiff would have been entitled to receive from the association, under the regulations and by-laws then in existence, the sum of five dollars a week sick benefits, and in the event of the death of her said husband, "all the amount realized from one assessment, not exceeding $1,000." Under these same rules and regulations it appears that there should be payable yearly dues of four dollars in the one thousand dollar class of membership; these dues were payable in advance, and by the receipts filed in evidence it appears that they were deemed payable semi-annually in advance, that is, two dollars every six months. (See plaintiff's exhibit, examiner No. 1.)

It was admitted at the hearing that the plaintiff is a colored woman.

All dues were paid up to the date of Johnson's death, and all assessments also, with the exception, as is alleged by defendant, of the one called for on March 17, 1887, and in consequence of such alleged non-payment the defendant resists the claim of the plaintiff, for the sum to be realized by one assessment, not exceeding $1,000, claimed to be due in consequence of the death of her husband on the 15th of May, 1887. It appears that at a meeting of a board of directors held on the 20th of January, 1886, the following resolution "was added to the by-laws and constitution of the association":

"Resolution 3d. Any member being sick for six weeks, one year's dues will be deducted from the amount of benefits";

"Ten weeks, two years' dues will be deducted; fifteen weeks, three years' dues will be deducted; twenty weeks, four years' dues will be deducted; twenty-six weeks, five years' dues will be deducted; the same dues to be held in reserve by the office and paid to the secretary as the annual dues become due to the society."

The next annual meeting of the association after the adoption of said resolution 3 by the board of directors was held on the 2d of June, 1886, and nothing was done by said annual meeting to ratify or confirm the resolution, nor was it ever confirmed by any general meeting "duly called for that purpose," as required by the provisions of the Act of 1868, Sec. 50 (Code, Art. 29, Sec. 58).

It will be seen that by said resolution 3 the sick benefits agreeds to be paid by

the terms of the certificate and of the copy of the by-laws that accompanied it were decreased, at least for the time being, to the extent that the annual dues for other than the current six months, were to be deducted, and a material change was thereby made in the agreement as set out in the certificate.

The defendant contends that it had the right to make such change, as by Art. 2, Sec. 5, of the by-laws, and by rule 9, Art. 6, the directors were authorized to fix such rates and adopt such plans and regulations in regard to membership, not inconsistent with the articles of incorporation, as they might deem proper for the welfare of the association, and that "These by-laws, rules and regulations and plan and system of membership may be annulled, amended or changed by a majority vote of all the directors at one of the regular meetings of the association." (See Weeks' testimony, p. 21.)

The defendant further contends that in consequence of these powers given to the board of directors, it was not necessary that the rule changing the amount to be actually paid on sick benefits should be submitted to a general meeting of the association. In other words, it is contended that the association could thus nullify one of the sections of the very statute under which alone it could claim the right to exist, and this notwithstanding the clear, positive language of the section that "Every such by-law, and every repeal, amendment, or re-enactment thereof, unless in the meantime confirmed, at a general meeting of the company, duly called for that purpose, shall only have 'force until the next annual meeting of the company,' and in default of confirmation thereof 'shall, from that time only, cease to have force'." I cannot see any force in this contention, but think that under the plain words of the statute, this rule or by-law, even were it such a reasonable one as would be held valid and not inconsistent with vested rights, ceased after the 2d of June, 1886, to have any effect. Johnson, in his application, did, it is true, bind himself to comply with the by-laws, &c., "as they now exist, or may hereafter be altered or amended"; but this can only mean that he would comply with such by-laws, &c., as might be legally adopted; as this resolution 3 was not legally adopted, it had no

binding effect on the plaintiff at the time it was enforced against her, unless by the action of herself, or of her husband, she should be held estopped from resisting it.

The section of the statute referred to seems to have been enacted to meet just such a case as this. Managers or directors of corporations frequently act, owing perhaps to the carelessness of stockholders and members, as if they alone constituted the corporation, and pass such rules and regulations as they may think proper for the interests of the corporation, and many instances show that they have acted in the interest of certain members without regard to the general interests or individual rights. Our statute here steps in and says that no rule or regulation shall have any legal effect after the next succeeding general meeting of the corporation, unless ratified and confirmed by the stockholders or members at such meeting, or at one specially called for the purpose. To permit a corporation at the time of its organization, or at any other time, to give power to its board of managers or directors to nullify this provision, would defeat the whole object of the enactment.

It is, however, contended by the defendant that even if the resolution 3 was not legally adopted, still there has been such a waiver or acquiescence on the part of the plaintiff that she is now estopped from contesting its legality.

In examining this question it is necessary to look at the character of said resolution 3. What, on the face of it, was its object? There can hardly be a doubt that the object was in an indirect way to accomplish what would not be allowed to be done directly. It was evidently intended to reduce the amount to be paid to members or beneficiaries on account of sick benefits, to keep in the treasury of the association money that it had been agreed should be paid on account of sick members. It certainly seems to me to have impaired vested rights, and to have been a regulation that did not bear justly or equally on all members. A member who was in good health was required to pay two dollars every six months. no other dues would be required of him; a sick member, at the very time when it would be supposed he would most need the money, was compelled to pay dues in advance years ahead; he might never obtain any advantage from

40

these advance payments, he might die —as was the case with the husband of the plaintiff—and all obligations to pay dues would cease and still there would be money in the hands of the association on account of his dues which it was never originally intended he should pay. I think such a regulation so unreasonable, so unequal in its action and such an interference with vested rights, that even if it had been legally adopted, it would never be enforced in a court of equity against any except those who had acquiesced in its passage, or whose conduct and action had been subsequently such as would preclude them from asserting their rights against others who in good faith had relied upon such conduct and had been led to change their position for the worse. What does and does not amount to this estoppel has been considered in many cases. See Morrison vs. Dorsey, 48 Md. 472; Insurance Co. vs. Conner, 17 Penna, St. R. 136; Kent vs. Quicksilver Mining Co., 78 N. Y. 159. In the last cited case, page 184, it is said to be a serious question "whether, though there was at the outstart, a minority of stockholders who gave no assent to the corporate act, there has not been such tacit acquiescence and delay in action by that minority, as to amount to indefensible 'laches' and estoppel." And on page 187, Judge Folger goes on to explain what is meant by such "indefensible laches and estoppel," as follows:

"Where *third parties* have dealt with the company, relying in good faith upon the existence of corporate authority to do an act, there is not needed that there be an express assent thereto on the part of stockholders to work an equitable estoppel upon them. Their conduct may have been such, though negative in character, as to be taken for an acquiescence in the act; and when harm would come to such third parties, if the act were held invalid, the stockholders are estopped from questioning it." And this I take to be the scope and meaning of the decision of our Court of Appeals in Morrison vs. Dorsey, so far as it bears on the point under discussion.

In the case before us there is nothing to show that any injury would be done to third parties by giving the relief asked for by the plaintiff; she has not, by her conduct, led any third party to change his position for the worse.

But the defendant contends that both the plaintiff and her husband have expressly acquiesced in the action of the directors, and thus waived their rights, if any they, or either of them, had.

In regard to the action of the husband, I have no hesitation in saying that there has not been shown any such conduct as would justify me in holding that the plaintiff's rights have been destroyed, and I consider it doubtful whether he could, under the circumstances, by any acquiescence on his part, have affected the rights of this plaintiff, who is the beneficiary under this certificate.

I will therefore consider the conduct of the plaintiff in this regard. Has she done any act by which her rights under this certificate have been forfeited? We should, I think, in such a case as this, look closely to the relations of the parties. Here we have a colored woman in an humble position in life, her husband sick, and in need of means for her daily wants. On the other side we have the intelligent officers of the corporation. After her right to these sick benefits had matured, it is claimed that she acquiesced in the disposition of funds, due her, that was made by the officers. Weeks says he thinks he read to the plaintiff resolution No. 3 some weeks before the 7th of April, 1887, and she expressed herself perfectly satisfied. (Answers to 45, 46, 47 cross-questions.) Robert Craig, in his answer to the 3d question, says that at the interview with the plaintiff on the 7th of April, when she had called for the money due her for sick benefits, "Mr. Weeks read to her from the by-laws," &c. "She said she understood it, then he paid her fifteen dollars and then said to her, 'you owe me now $8 for two year's in advance'." The $8 was deducted, for I considered it a mere quibble to say that the $15 was paid to her and that she then immediately paid back the $8. She paid it under the assurance of Mr. Weeks that she owed the money and was really only entitled to $7. She was told she owed the money, when, in my opinion, she owed nothing. If it had been explained to her that the resolution or by-law by which she was required to pay this money had never been legally adopted, that she did not owe this money, but that she could, if she so pleased, pay two years' dues in

advance, is it possible to believe that she would have made such payment in her condition of need, as sworn to by her. Again, on her part, at that time there was an executed contract. She had made all the payments and done all the acts required to entitle her to the sick benefits.

In Foster vs. Dawber, 6 Exch. 839, cited on page 260 of Anson on Contracts, the Court said, "It is competent for both parties to an executory contract, by mutual agreement, without any satisfaction, to discharge the obligation of that contract. But an executed contract cannot be discharged except by a release under seal, or by performance of the obligation, as by payment where the obligation is to be performed by payment."

This resolution No. 3, as I have said, was, in my opinion, adopted for the purpose of reducing the amount contracted to be paid for sick benefits, and, I think, for no other purpose. To compel payment of these dues in advance, under the circumstances of this case, was nothing more nor less than to compel the plaintiff to take seven dollars in full payment for fifteen, and I do not think that such acquiescence as is shown amounted to a valid waiver of her rights. I have carefully examined all the testimony and find no reason for holding otherwise.

If I am correct in this, then it follows that at the time that the assessment of March 17th became due and payable, that is, on the 15th of April, 1887, the defendant had in its hands considerably more of the plaintiff's money than was required to pay the assessment due, and the question is presented whether, in view of this state of facts, the Court will hold that in equity and good conscience the assessment should be considered as paid.

The plaintiff here contends that the maxim "Equity regards that as done which ought to be done," should be applied in this case.

In Pomeroy's Equity, Sec. 364, in treating of this maxim, it is said, "So far from the maxim being confined to express executory contracts and to those dispositions of property which give rise to an equitable conversion, it has been applied by the most eminent Courts to all classes of equities, to every instance where an equitable

'ought,' with respect to the subject matter rests upon one person towards another, to every kind of case where an affirmative equitable duty to do some positive act devolves upon one party and a corresponding equitable right is held by another party." I think the maxim should be applied in this case.

The beneficiaries under these policies or contracts of insurance should receive great consideration from courts of equity. They are generally persons of limited income, and they deny themselves for years in order to make some provision for future necessities, and Courts should go very far to prevent forfeitures in these cases. In the Mutual Endowment Association vs. Essender, 59 Md. 463, which was a case involving the forfeiture of membership for non-payment of dues, the Court, on page 468, says: "Now, forfeitures are not favored in the law, and the Courts are always ready to seize hold of any circumstances that can reasonably avoid so harsh a measure as a forfeiture."

In the Girard Life Insurance Co. vs. Mutual Life Insurance Co., 97 Pa. St. R., p. 26, the Court says: "The law, however, does not favor forfeitures, it never enforces them cheerfully and will decline to enforce them where they are against equity and good conscience."

In this case the company had on hand dividends which had not been paid to the assured; the amount of said dividends had not been ascertained; yet, to prevent a forfeiture, the Court held that they should have been applied to the payment on the premium. The company insisted that the assured had not authorized them to so appropriate the dividends, but the Court held, that having the money in hand belonging to the assured and the power to so apply it, it should have been so applied. It was urged that the application of such a rule to the affairs of a large insurance company may seriously embarrass its business. "On the other hand," says the Court, "the forfeiture of policies for non-payment of premiums, when the company has in its possession money sufficient to pay them, may seriously embarrass the unfortunate assured." The Court further, on page 27, uses this language, "while a court of equity

will sustain a forfeiture under some circumstances, it will scrutinize the transaction and require that all the rights of the assured shall be respected. It is quite possible, there may be facts, which in the judgment of the officers of the defendant company, justify them in declaring the policy forfeited in this case; yet we are constrained to say that it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium and which it has the power to apply to its payment."

I think that the Court can and should say, in the pending case, that there "are circumstances that can reasonably avoid so harsh a measure," as a forfeiture, and that it should apply the principles laid down in The Girard Life Insurance Co. vs. Mutual Life Insurance Co.

I do not think that the plaintiff should be held estopped by any such assent, as she is alleged to have given in this case, to the appropriation of the sick benefits to the payment of those dues in advance. Even without regarding the plaintiff's testimony, she is only shown to have expressed herself satisfied, under the assurances of the defendant's officers that this money was due: in other words, that a debt was due by her to the defendant. But no debt was due, and the dues thus claimed to have been paid in advance never did become due and never can become due. Her husband died before there could have been any valid claim for their payment. Her assent therefore, like the assurances of the officers that the amount was due, was given, if given at all, under a mistake of fact, and has more appearance of a submission under compulsion than a free assent.

Believing that the money retained from the amount justly due to the plaintiff for sick benefits should have been applied to the payment of the assessment of the 17th of March, 1887. I will sign a decree granting her the relief asked.